UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **FERRARA FIRE APPARATUS, INC.** | **CIVIL ACTION** |
| **VERSUS** | |
| **JLG INDUSTRIES, INC. AND GRADALL INDUSTRIES, INC.** | **NO. 08-285-C-M2** |

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

    Signed in chambers in Baton Rouge, Louisiana, February 12, 2009.

                                                       **MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**FERRARA FIRE APPARATUS, INC.**                                    **CIVIL ACTION**

**VERSUS**

**JLG INDUSTRIES, INC. AND**                                              **NO. 08-285-C-M2**
**GRADALL INDUSTRIES, INC.**

### MAGISTRATE'S REPORT AND RECOMMENDATION

This matter is before the Court on the Motion to Disqualify Counsel (R. Doc. 10) filed by plaintiff, Ferrara Fire Apparatus, Inc. ("FFA"). Defendants, JLG Industries, Inc. and Gradall Industries (collectively "defendants"), have filed an opposition (R. Doc. 11-2) to FFA's motion.

### FACTS & PROCEDURAL BACKGROUND

FFA filed this suit in the 21st Judicial District Court, Parish of Livingston, State of Louisiana, on April 7, 2008. In the petition, FFA alleges that it entered into a partnership or joint venture with JLG (and Gradall, since it is the legal successor of JLG) that granted FFA the exclusive right to distribute and sell a product currently designated as "Strongarm" worldwide in exchange for FFA's development and marketing of the "Strongarm" product. According to FFA's allegations, FFA and JLG or Gradall operated continuously under the general terms of that partnership/joint venture agreement until February 8, 2008, when Gradall purported to terminate the relationship. FFA contends that the alleged basis for termination was terms and conditions that were never made a part of the partnership/joint venture agreement. FFA further alleges that, upon information and belief, Gradall has offered, and intends to offer, sales or distributorship agreements to third parties with respect to the product currently designated as "Strongarm," and that such offers constitute

1

violations of FFA's exclusive rights under the general terms of the partnership/joint venture agreement as well as a breach of fiduciary duty and/or an unfair trade practice.

On November 5, 2008, FFA filed the present motion, seeking to disqualify defense counsel.  In its motion, FFA contends that its president and owner, Chris Ferrara ("Mr. Ferrara"), and one of the partners with the law firm currently enrolled as defense counsel in this matter, Jerry Dodson ("Mr. Dodson"), were at one time next door neighbors for approximately five (5) years and that, during that time, Mr. Ferrara and Mr. Dodson "engaged in numerous conversations regarding FFA" concerning the following matters:  (a) Customers who do business with FFA; (b) Profitability of FFA; (c) Sales numbers of FFA; (d) Employees of FFA; (e) Legal issues of FFA; (f) How fire trucks are built at FFA and the inner workings of the process; (g) Delivery process at FFA; (h) New and future products at FFA; (i) Manufacturing issues at FFA; (j) Financial matters of FFA; (k) Personal interests of Mr. Ferrara; (l) Investment properties of Mr. Ferrara; (m) Gaming property investment of Mr. Ferrara located in Mississippi; (n) How and why Mr. Ferrara's investments worked; (o) Dollar amounts of gaming site; (p) Future plans of investments; and (q) Family issues. FFA contends that, through conversations about the above topics, Mr. Dodson took the role of legal advisor and counselor for FFA, and at a minimum, an attorney-client relationship regarding FFA developed between Mr. Dodson and Mr. Ferrara.  FFA further asserts that a substantial relationship exists between the subject matter of the former and present representations of FFA/Mr. Ferrara by Mr. Dodson, and Mr. Dodson should therefore be disqualified as defense counsel in this matter.

**LAW & ANALYSIS**

The Fifth Circuit Court of Appeals has recognized that motions to disqualify are "substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law." *In re American Airlines*, 972 F.2d 605, 610 (5th Cir. 1992). Federal courts may adopt state or ABA rules as their ethical standards, but whether and how those rules are to be applied is a question of federal law. *Id.*[1] The Fifth Circuit has held that motions to disqualify on the ground of former representation are governed by a "substantial relationship" test, under which the moving party must establish the following two (2) elements: (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify; and (2) a "substantial relationship" between the subject matter of the former and present representations. *Id.*, at 614. The "substantial relationship" test is only satisfied after the moving party "delineates with specificity the subject matters, issues and causes of action common to prior and current representations" and proves that the prior and current representations are "substantially

---

[1] Through Local Rule 83.2.4M, the U.S. District Court for the Middle District of Louisiana has adopted the Rules of Professional Conduct of the Louisiana State Bar Association. *See,* LR83.2.4M. The Louisiana Rule of Professional Conduct that is relevant to this motion is Rule 1.9(a), which provides the following:

> (a)  A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Rule 1.9, Louisiana Rules of Professional Conduct. Rule 1.9 of Louisiana's Rules of Professional Conduct is the same as Rule 1.9 of the ABA's Model Rules of Professional Conduct.

3

related." *Consolidated Grain & Barge Co., Inc. v. M/V CSS Atlanta*, 2000 WL 977606, *2 (E.D. La. 2000).

The Court finds that FFA has failed to establish the required elements of the "substantial relationship" test required by the Fifth Circuit. FFA has failed to produce sufficient evidence demonstrating that an actual attorney-client relationship has ever existed between Mr. Dodson and FFA or Mr. Ferrara. While FFA has produced an affidavit by Mr. Ferrara, wherein he states that he "has read all the allegations in the [ ] Motion to Disqualify Counsel and the Memorandum in Support of the Motion to Disqualify Counsel and that all allegations contained therein are true and correct to the best of his knowledge, information and belief," Mr. Ferrara provides absolutely no details within his affidavit as to any contacts that Mr. Dodson has had with FFA and/or any particular legal services or advice that Mr. Dodson rendered on behalf of FFA or Mr. Ferrara. Thus, the only support for FFA's position is the vague allegations in its motion that Mr. Dodson and Mr. Ferrara were next door neighbors for five (5) years, that Mr. Dodson was licensed and practicing law at that time, and that Mr. Ferrara and Mr. Dodson engaged in numerous conversations regarding FFA that touched on the list of matters identified in the above "Facts & Procedural Background" section of this report. Such general allegations, many of which have been directly contradicted by the detailed affidavit of Mr. Dodson submitted with defendants' opposition, are simply insufficient to establish that an actual attorney-client relationship existed between Mr. Dodson and Mr. Ferrara (or FFA) while they were neighbors.

According to Mr. Dodson's affidavit, the allegations of FFA as to the nature and extent of the conversations between Mr. Dodson and Mr. Ferrara are largely inaccurate.

4

Mr. Dodson points to the following inaccuracies: (1) Mr. Dodson and Mr. Ferrara were not next door neighbors for five (5) years, as FFA alleges, but were instead neighbors for one (1) year and eleven (11) months, from December 1995 to November 1997; (2) Mr. Dodson recalls no conversations with Mr. Ferrara whatsoever concerning the customers who conduct business with FFA, other than one (1) occasion when Mr. Ferrara vaguely mentioned that certain cars in his driveway were those of some Chinese businessmen who were at Mr. Ferrara's house for a dinner party and to whom FFA was trying to sell fire trucks. Other than the nationality of the customers, no other information concerning those businessmen was provided to Mr. Dodson; (3) The only information that Mr. Ferrara ever provided to Mr. Dodson concerning the profitability of FFA was the general statement that the company was "doing well" and that he hoped the company would grow so he could sell it to a larger company; (4) Mr. Dodson was never provided any information concerning the sales numbers of FFA; (5) Mr. Dodson was never provided any information as to the number of employees at FFA, other than that the company "hired a lot of people;" (6) Mr. Dodson does not recall ever discussing any legal issues of FFA with Mr. Ferrara; (7) Mr. Dodson cannot recall ever being provided with any information concerning how FFA builds fire trucks or about the inner workings of that process; (8) Mr. Dodson never received any information concerning the delivery process of FFA, the new and future products of FFA, or the manufacturing issues at FFA; (9) Mr. Dodson never discussed FFA's financial matters with Mr. Ferrara, other than the general statement that "the company was doing well;" (10) The only personal interests that Mr. Dodson discussed with Mr. Ferrara related to their families, schools, subdivision matters, and perhaps an occasional political issue; (11) The only information Mr. Ferrara shared with Mr. Dodson concerning his investment

properties was that he had purchased property in Biloxi, Mississippi, that was zoned for gambling and that he had an interest in acquiring gambling properties.  No detailed information concerning those investments was shared with Mr. Dodson; and (12) No information concerning actual dollar amounts received from Mr. Ferrara's gaming site was shared; Mr. Dodson was merely told that the value of the gaming site would increase several times since gambling property prospered in Mississippi.

     Mr. Dodson further explains in his affidavit that all of the conversations he had with Mr. Ferrara were "social in nature" and that, at no point, did he ever provide Mr. Ferrara or his company with any legal advice or services.  He notes that Mr. Ferrara never asked that he perform any legal work on Mr. Ferrara's or FFA's behalf; that he has never been to the offices of Mr. Ferrara or of FFA; that Mr. Ferrara has never been to his law office; that neither he, nor any member of his law firm, has ever opened a file pertaining to Mr. Ferrara or FFA until the above-captioned litigation in which FFA is a defendant; that no legal fees have ever been billed to or received from Mr. Ferrara or FFA by Mr. Dodson's firm.  Mr. Dodson also explains that, at some point after this suit was filed and his partner answered on behalf of the defendants, Mr. Ferrara contacted him and asked if Mr. Dodson's firm was representing the defendants in this matter.  Mr. Dodson indicated that he did not know and that he would find out and call Mr. Ferrara back.  According to Mr. Dodson's affidavit, when he called Mr. Ferrara back and advised that his firm would be representing the defendants, Mr. Ferrara "expressed dismay that the defendants had been able to retain a competent firm to represent them in the matter, but did not in any way indicate that he considered that [Mr. Dodson] had ever represented him."  Finally, Mr. Dodson attests to the fact that, aside from knowing that his partner, Brent P. Frederick ("Mr. Frederick"), is representing the

defendants in this matter, he is "not at all familiar" with this litigation.  He has never discussed his relationship with Mr. Ferrara with Mr. Frederick or with the clients of his law firm.

When the detailed affidavit of Mr. Dodson is compared to the vague allegations set forth in FFA's motion, the Court agrees with defendants that the social conversations of Mr. Dodson and Mr. Ferrara that took place for a limited time period more than eleven (11) years ago simply cannot be considered by a reasonable person as having created a former attorney-client relationship.  *See, Williams v. Roberts*, 2006-169 (La. App. 3d Cir. 2006), 931 So.2d 1217, 1220-21("[E]ven though whether an attorney-client relationship exists turns largely on one's subjective belief that it does, a person's subject belief that an attorney represents him must be reasonable under the circumstances").[2]  Since FFA has failed to satisfy the first element of the "substantial relationship" test and both elements are required to disqualify counsel, the Court need not examine whether FFA has established the second element.[3]  Accordingly, FFA's motion to disqualify should be denied.

---

[2] For another case where the first requirement of the "substantial relationship" test was not satisfied, *See, Zichichi v. Jefferson Ambulatory Surgery Center, LLC*, 2008 WL 2859232 (E.D.La. 2008)(holding that there was no actual attorney client relationship, where there was no evidence that the plaintiff in the present suit had manifested an intent to have defense counsel provide legal services for him, that defense counsel consented to do so, or that defense counsel had a reasonable basis to believe that plaintiff was relying on him for legal services.  Although both individuals submitted conflicting affidavits about what took place during a phone conversation, the court considered all of the evidence and found that defense counsel's statements regarding the substance and nature of the conversation were more credible).

[3] Furthermore, even if the Court was to address the second element of the "substantial relationship" test, the Court simply does not find that the general information Mr. Ferrara shared with Mr. Dodson during the course of their short relationship as neighbors, as identified in Mr. Dodson's affidavit, was sufficiently confidential to Mr. Ferrara/FFA and sufficiently related to any of the issues in this litigation to find that a

**RECOMMENDATION**

For the above reasons, it is recommended that the Motion to Disqualify Counsel (R. Doc. 10) filed by defendant, Ferrara Fire Apparatus, Inc., should be **DENIED**.

Signed in chambers in Baton Rouge, Louisiana, February 12, 2009.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**

---

"substantial relationship" exists between any of those prior discussions and the subject matter of the present suit. There is absolutely no evidence before the Court that Mr. Ferrara ever shared any information with Mr. Dodson concerning FFA's alleged partnership/joint venture agreement with JLG/Gradall and/or regarding any matters relating to the distribution, sale, development or marketing of the product currently designated as "Strongarm" or other FFA products. *See, Abney v. Wal-Mart*, 984 F.Supp. 526 (E.D.Tex. 1997)(A former client arguing for disqualification must make a showing that some substantive conversations between the former client and the attorney occurred which contained information relevant to the present litigation); *Reed v. Johnson*, 1994 WL 50234 (E.D.La. 1994)(Movers failed to show any relationship whatsoever between the former representation of the defendant and the present controversy and there was no evidence that there was any communication from the defendant to his former counsel involving any information concerning the defendant's business that was relevant to the current litigation).

Finally, since it has not been established by FFA that Mr. Dodson had a former attorney-client relationship with Mr. Ferrara/FFA and that a "substantial relationship" exists between any former representation/discussions and the subject matter of the present suit, Mr. Dodson would not be disqualified from acting as counsel in this suit if he were one of the attorneys specifically enrolled herein. Furthermore, his partners at Dodson, Hooks & Frederick, APLC, are also not disqualified from serving as counsel for defendants herein under Rule 1.10 of the Louisiana Rules of Professional Conduct. Rule 1.10 provides that, while lawyers associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or Rule 1.9.